IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01940-PAB-MJW


UNITED STATES OF AMERICA,

Plaintiff,

v.

JONI K. D'ANDREA,
HOWARD MITCHELL GILBERT, and
PUBLIC SERVICE CREDIT UNION,

Defendants.

---

**RECOMMENDATIONS ON
(1) DEFENDANT HOWARD MITCHELL GILBERT'S MOTION FOR SUMMARY
JUDGMENT (Docket No. 31),
(2) DEFENDANT PUBLIC SERVICE CREDIT UNION'S MOTION FOR SUMMARY
JUDGMENT (Docket No. 33),
(3) DEFENDANT JONI K. D'ANDREA'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 42), and
(4) UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Docket No. 58)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This case was referred to the undersigned pursuant to an Amended Order of

Reference to United States Magistrate Judge issued by Judge Philip A. Brimmer on

September 9, 2009. (Docket No. 11).

The operative pleading is the Amended Complaint to Recover Judgment Against

Transferee and to Foreclose Federal Tax Liens (Docket No. 13). According to that

pleading, "[t]his action is commenced pursuant to 26 U.S.C. §§ 7401 and 7403," and "is

brought to establish that Joni K. D'Andrea is liable to the United States for the federal

income tax liabilities properly assessed against Monty L. Cook, to foreclose federal tax liens against the real property described below, and to sell the property and distribute the proceeds from such sale in accordance with the Court's findings as to the validity and priority of the liens and claims of the parties." (Docket No. 13 at 1-2, ¶ 2). The following three claims (counts) are raised in the Amended Complaint: (I) transferee liability pursuant to § 38-8-105, C.R.S., against defendant Joni K. D'Andrea for the amount of Cook's federal tax liability; (II) transferee liability pursuant to § 38-8-106, C.R.S., against D'Andrea for the amount of Cook's federal tax liability; and (III) foreclosure of the federal tax liens against the subject property that was transferred by D'Andrea to defendant Howard Mitchell Gilbert. Defendant Public Service Credit Union (hereinafter "PSCU") is a lender on the subject property to Gilbert.

Now before the court for report and recommendation are four motions for summary judgment (Docket Nos. 31, 33, 42, and 58). Following the filing of the first two motions, which were filed by defendants Gilbert and PSCU, respectively, this court denied the motion (Docket No. 35) of plaintiff United States of America (hereinafter the "Government") for relief under Fed. R. Civ. P. 56(f) with respect to those two motions. (Docket No. 40, Minute Order entered February 19, 2010). The Government filed objections to that Minute Order. (Docket No. 43). Such objections remain pending, and the Government has not filed responses to those two motions for summary judgment. Defendant Gilbert moved for entry of default judgment on his motion for summary judgment. (Docket No. 52). This court's recommendation that such motion for entry of default be denied (Docket No. 55) was accepted by Judge Brimmer. (Docket No. 56). In the interim, pro se defendant D'Andrea also moved for summary judgment (Docket

No. 42), and the Government filed a response thereto. (Docket No. 50 and 51). The Government subsequently filed its own motion for summary judgment (Docket No. 58), and each of the three defendants filed a response thereto (Docket Nos. 62, 63, and 69). The Government filed a reply to each of the responses filed by defendants Gilbert and PSCU. (Docket Nos. 65 and 68). Given the pendency of these motions, this court vacated the final pretrial conference that had been set for August 16, 2010.

In view of the Government's filing of its own motion for summary judgment, the court finds that the first two summary judgment motions are now ripe for ruling notwithstanding the pending objections to this court's denial of the Government's motion for relief under Rule 56(f). Even though the Government has not filed responses to the motions for summary judgment filed by Gilbert and PSCU, the Tenth Circuit has indicated that "although a district court may consider a motion for summary judgment uncontested for lack of a timely response, it cannot grant summary judgment unless the moving party has met its initial burden of production under Rule 56 and demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Issa v. Comp USA, 354 F.3d 1174, 1177 (10th Cir. 1993). The court has considered all four of the motions for summary judgment, the responses, and the replies. In addition, the court has considered applicable Federal Rules of Civil Procedure and case law, as well as the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

The Government is seeking to foreclose its federal tax liens on the subject real property and/or have a money judgment entered against pro se defendant D'Andrea. More specifically, the Government is asking the court

to adjudge and decree as follows: Determine and adjudge that the transfer from Monty Cook to Joni D'Andrea was fraudulent as to the United States pursuant to C.R.S. §§ 38-8-105, 38-8-106, or both; Determine that the United States has valid federal tax liens attaching to the Subject Property, by virtue of the assessments against Monty Cook and the recorded Notices of Federal Tax Lien; Order the United States' tax liens encumbering the Subject Property be foreclosed, the property sold free and clear of the interests of Joni K. D'Andrea, Howard Gilbert, and Public Service Credit Union and that the proceeds be used to satisfy the federal tax liens of Monty L. Cook (offsetting any money judgment entered against Joni D'Andrea); Determine the validity and priority of all liens and interests in the Subject Property and order that the proceeds from any judicial sale of such property be distributed accordingly; Alternatively, the United States seeks entry of judgment against Joni D'Andrea and for the United States in the amount of the federal tax liabilities of Monty L. Cook plus interest, or in the amount of the value of the transfer from Cook to D'Andrea in April 2003, whichever is less. The United States also requests that the Court award to the United States its costs incurred in bringing this action and other further relief as the Court deems just and proper.

(Docket No. 58 at 1-2).

**Undisputed Facts**

The following facts are undisputed.

The real property that is the subject of this litigation is known as 12856 South Silver Plume Street, Parker, in Douglas County, Colorado. On August 30, 1995, the subject property was conveyed to Monty L. Cook by Warranty Deed, which was recorded with the Douglas County Clerk and Recorder on September 5, 1995. Cook executed Deeds of Trust on the property as a borrower on August 31, 1995, to Universal Lending Corporation, lender; on June 4, 1996, to Lotus Limited, lender; and on January 7, 1997, to Lotus Limited, lender, all of which were recorded. On April 3, 2002, liens existed on the subject property, namely, (a) Universal Lending Corporation indebtedness in the principal sum of $147,240.00; (b) Equi Credit Corporation of

Colorado indebtedness in the sum of $20,865.00; and (c) a Lotus Limited indebtedness in the principal sum of $6,000.

On April 15, 2002, and August 12, 2002, an authorized delegate of the Secretary of the Treasury made assessments against Cook for unpaid federal income tax, penalties, interest, and other statutory additions for the 2000 and 2001 tax years. As of June 30, 2010, the current amount due for the 2000 and 2001 tax liabilities was $61,379.77. Notice and demand was made, and Cook failed to pay the taxes assessed.

On April 8, 2003, Cook, as grantor, executed a quit claim deed to himself and D'Andrea as grantees and recorded it with the Douglas County Clerk and Recorder on April 21, 2003. According to the deed, the consideration paid for this transfer was "ten dollars." The deed further provides that the conveyance was "not in tenancy in common but in joint tenancy."

On April 10, 2003, Cook and D'Andrea, as grantors and borrowers, granted a Deed of Trust on the subject property to M&T Mortgage to secure a loan of over $245,000, including a cash payout to Cook and D'Andrea in the amount of $81,069.00. Cook and D'Andrea used the proceeds to purchase real property in Elbert County. Through this closing, the prior indebtedness to Bank of America was paid in the amount of $136,222.84, indebtedness to Fairbanks was paid in the amount of $16,484.82, and indebtedness to Lotus Limited was paid in the amount of $1,816.54.

On December 18, 2003, Notices of Federal Tax Lien (hereinafter "NFTLs") were filed pursuant to 26 U.S.C. § 6323.

On February 6, 2004, Cook died. Probate proceedings were filed in the District Court for Douglas County, Colorado, and the Government (plaintiff here) did not file a

claim in the estate.

On July 30, 2004, D'Andrea conveyed the subject property by Warranty Deed to Gilbert and recorded the deed with the Douglas County Clerk and Recorder on September 8, 2004. The title search performed by Mile High Title Research revealed the presence of the recorded NFTLs prior to Gilbert's closing on the property. Mile High Title Research advised Attorneys Title Guaranty Fund, Inc., of the presence of the NFTLs. On August 29, 2008, Gilbert granted a Deed of Trust to PSCU to secure a loan in the amount of $224,000, and recorded it with the Douglas County Clerk and Recorder on September 16, 2008.

**Bases for Summary Judgment Motions**

The parties raise the following bases for their motions for summary judgment.

Gilbert. Defendant Gilbert seeks summary judgment, asserting that at the time the property had been quit-claimed to Cook and D'Andrea as joint tenants on April 8, 2003, there was no existing lien against the property filed by the Government. On April 10, 2003, Cook and D'Andrea signed a Promissory Note and Deed of Trust to secure a loan in the amount of $245,883. In consideration of the transfer of the property to D'Andrea, D'Andrea incurred the obligation of paying the secured loan to M&T Mortgage, which was used to pay the prior existing mortgages and became the prior secured interest on the property. The NFTLs were not filed in Douglas County until December 18, 2004. On February 6, 2004, Cook died, and by operation of the joint tenancy right of survivorship, Cook's interest in the property was extinguished, and D'Andrea became the sole owner of the subject property. She was obligated to and made payments on the outstanding loan. On July 30, 2004, D'Andrea conveyed the

property by Warranty Deed free and clear of the liens to Gilbert. The purchase price of the property was for less than the outstanding amount due on the note to M&T mortgage and was a short sale. The M&T mortgage was released. D'Andrea transferred the property to Gilbert and did not receive any monies from the sale of the subject property because there was no equity in the property in excess of the existing obligations on the outstanding loans. The Government did not pursue any collection attempts against Cook prior to his death and did not pursue collection in Cook's estate proceedings. The recorded documents conclusively show that the Government does not have a claim. The Government is barred from recovery by its own actions by its failure to record the NFTLs until after the transfer into joint tenancy of the property, its failure to initiate execution on Cook's interest prior to his death, its election of remedies not to file a claim in Cook's estate, and the lack of equity in the property, and is barred from recovery against Gilbert as a bona fide purchaser for value of the property.

PSCU. The PSCU concurs with Gilbert's motion for summary judgment and asserts that summary judgment should enter in PSCU's favor because (1) the federal tax liens were extinguished by operation of Colorado joint tenancy law, and (2) PSCU is a bona fide encumbrancer for value.

D'Andrea. Pro se defendant D'Andrea adopts the undisputed facts, legal authorities, and arguments raised in Gilbert's summary judgment motion. In addition, D'Andrea asserts that in the Declaration submitted by the Government from Shayla McCormally, McCormally states repeatedly that the Government is unable to fully and completely justify its opposition to any motion for summary judgment, that "in the same Declarations states repeatedly that is 'anticipates the evidence will revealed," and

"[a]dmits that 'material facts have not yet been disclosed or discovered? And further admits that the government 'cannot say with authority what facts will come.'" (Docket No. 42 at 2). D'Andrea further asserts that "[t]he Court should recognize that this is an abuse of power by the US Government and is nothing more then a fishing expedition to get money for a cash strapped Government. The Government failed to properly exercise its ability to obtain the taxes owed when it had the chance and 6 years later is now suing everyone in line to see what sticks! This is not a Justice System but an abuse of the Legal System." (Docket No. 42 at 2).

Government. The Government moves for summary judgment on the following grounds: (1) the United States' tax liens attached to all of Cook's property interests at the time of assessment, (2) D'Andrea does not qualify as a "purchaser" under 26 U.S.C. § 6323, (3) D'Andrea is a fraudulent transferee of Cook, (4) Gilbert's and PSCU's interests in the property were acquired subject to the United States' liens, and (5) Gilbert's and PSCU's status as a third party to the Cook-D'Andrea transfer or to the tax assessments does not preclude foreclosure of the attached lien.

## Summary Judgment Standard

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which

it believes demonstrate the absence of genuine issues for trial." <u>Robertson v. Board of County Comm'rs of the County of Morgan</u>, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Mares v. ConAgra Poultry Co.</u>, 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" <u>Southway v. Central Bank of Nigeria</u>, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), <u>aff'd</u>, 328 F.3d 1267 (10th Cir. 2003). "Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." <u>Id.</u> "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." <u>Id.</u>; <u>Robertson</u>, 78 F. Supp.2d at 1146 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); quoting <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." <u>Southway</u>, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." <u>Id.</u> at 1273.

Since defendant D'Andrea is proceeding without counsel, her pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Discussion**

Counts I and II. In Counts I and II of the Complaint, the Government alleges fraudulent transfer of the property by Cook to D'Andrea and himself. Count I of the Amended Complaint raises a claim of transferee liability under § 38-8-105, C.R.S., against defendant Joni K. D'Andrea for the amount of Cook's federal tax liability. More specifically, the Government contends that the quit-claim transfer was fraudulent as to the United States because "it was made with the actual intent to hinder, delay or defraud the United States of the value of its claim against Monty L. Cook." (Docket No. 13 at 5, ¶ 21). Alternatively, the Government contends that "the transfer . . . was fraudulent as [to] the United States as it was made without receiving a reasonably equivalent value, and at the time of the transfer, Monty L. Cook intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due, to wit, the federal income tax liabilities . . . ." (Docket No. 13 at 5-6, ¶ 22).

Section 38-8-105, C.R.S., concerning transfers fraudulent as to present and future creditors, provides in pertinent part:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the

transfer or incurred the obligation:

     (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

     (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

     (I) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

     (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

     (2) In determining actual intent under paragraph (a) of subsection (1) of this section, consideration may be given, among other factors, to whether:

     (a) The transfer or obligation was to an insider;

     (b) The debtor retained possession or control of the property transferred after the transfer;

. . .

     (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

     (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

     (j) The transfer occurred shortly before or shortly after a substantial debt was incurred . . . .

§ 38-8-105, C.R.S.

In Count II of the Amended Complaint, the Government raises a claim of

transferee liability pursuant to § 38-8-106, C.R.S., against D'Andrea.  More specifically,

the Government contends that the transfer "was fraudulent as to the United States as

each transfer was made without receiving a reasonably equivalent value in exchange for

the transfer, and Monty L. Cook was either insolvent at the time of the transfer or became insolvent as a result of the transfer." (Docket No. 13 at 6, ¶ 26). Alternatively, the Government asserts that the transfer "was fraudulent as to the United States as each transfer was made to an insider, Joni I. D'Andrea; Monty L. Cook was either insolvent at the time of the transfer or became insolvent as a result of the transfer; and Joni K. D'Andrea had reasonable cause to believe at the time of each transfer that Monty L. Cook was insolvent or became insolvent as a result of the transfer." (Docket No. 13 at 6, ¶ 27).

Section 38-8-106, C.R.S., regarding transfers fraudulent as to present creditors, provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

> (2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

38-8-106, C.R.S.

This court finds that the Government has shown that there is no genuine issue as to any material fact that D'Andrea is a fraudulent transferee of Cook under §§ 38-8-105 and 38-8-106, C.R.S. "Reasonably equivalent value" was not exchanged for the subject property. The quit claim deed itself recited consideration of only "$10.00." In addition, there was no payment of the state document fee. See § 39-13-103, C.R.S., discussed more fully below. In addition, D'Andrea testified at her deposition that she did not enter

into the April 10, 2003, Promissory Note and Deed of Trust in exchange for her interest in the subject property but rather in order to withdraw equity from the property so that she and Cook could purchase another piece of real estate on which they would build a home. (Docket No. 60-8 at 12, 14-15; Gov't Ex. 8; D'Andrea Dep.at 60:4-8; 62: 19-25-63:1-2). Cook and D'Andrea used the subject property's equity to secure a loan of over $245,000 with a cash payout in the amount of $81,069 just days after the quit claim deed was executed. D'Andrea gave nothing to Cook to become a nominal owner of the subject property. As asserted by the Government, D'Andrea served as a convenient strawman for Cook to use to get value out of the subject property which was already encumbered by tax liens.

Furthermore, Cook reasonably should have believed that he had incurred debts, including his tax debt to the Government, that were beyond his ability to pay at that time. Cook failed to pay his federal tax debts. Such failure to timely pay debts creates the presumption of insolvency. § 38-8-103(2), C.R.S. (""A debtor who is generally not paying his debts as they become due is presumed to be insolvent."). In addition, his daughter Narissa Hill (who was also his Executrix, was the only other employee in his business, and regularly saw the business's financial records), states that Cook's liabilities exceeded his assets, and he "lived beyond his means during the last years of his life, including the 2002 through February 2004 period." (Docket No. 59-2; Hill Declaration). Also, Cook continued to enjoy possession and control of the property after the quit-claim transfer, using the equity to purchase other property. In addition, the quit-claim transfer occurred within a year of the federal tax assessments. In sum, the facts are sufficient to show an actual intent to defraud.

D'Andrea has not responded with specific facts showing the existence of a genuine factual issue to be tried. Instead, she has merely made unsupported or conclusory allegations without any significant probative evidence, which are insufficient to defeat the Government's motion. Robertson, 78 F. Supp.2d at 1146. D'Andrea merely states in response to the Government's motion:

> Joni D' Andreas Pro Se, does not believe that the United States Government has proven any of it's allegations and in fact by producing the Declaration of Narissa Hill, has proven that there was no fraud, no conspiracy and no intent by Ms D'Andrea to defraud the Federal Government, and in fact shows that Narissa Hill who was Monty Cook's daughter sometimes bookkeeper and Personal representative of Monty's estate and was the only person who financially benefited from the death of Monty by selling his assets and keeping the money and not paying the Federal government. She has admitted in her Declaration that she had prior knowledge of the tax liens. The Court should ask the United States Government why Narissa is not a defendant to this action.

> 1. The Government has stated that it is not disputed that there was no consideration for the transfer of ½ interest of the subject property, well that is simply not true, it is disputed. Consideration was the assumption and liability of ½ the debt, and upon Monty's death, ALL of the debt. It took all of my 401K and savings to keep the properties from being foreclosed on and both properties sold with no money coming to me.

> 2. The Government states that "adequate and full consideration" was not given, well that is certainly at issue and is very disputable.

> 3. The Government contends that Monty should have known he had debt to the Government, and I do not dispute that however he did not share that with me, nor do they contend he shared that information with me. By mixing the names back and forth in the Motion, it appears that we both owe the tax debt. That may be good lawyering but not fair to this Defendant or for that matter any of the Defendants.

In conclusion, this lawsuit has many issues to be decided one of which must be the abuse of the United States Government in bringing this action

in the first place.  Another issue is the in action of the Government not to bring in Narissa Hill as a Defendant.  For this and many other allegations that are in dispute and are at issue I am asking the Court to DENY this Motion.

(Docket No. 69).

Under Colorado law, any conveyance made with the intent to hinder, delay, or defraud creditors is void.  See §§ 38-8-105, 38-8-106, 38-8-108, 38-10-117, C.R.S.; United States v. Schaeffer, 245 B.R. 407 (D. Colo. 1999).  "Fraud may be inferred from the facts and circumstances."  United States v. Schaeffer, 245 B.R. 407, 412 (D. Colo. 1999).  D'Andrea is liable to the Government to the extent of the federal tax liens or the value of the subject property transferred, whichever is less. § 38-8-109(2)(1); Phelps v. United States, 421 U.S. 330, 334 (1975) (when property subject to tax lien is transferred, the lien attaches to the proceeds of the sale).  The federal tax liens calculated to June 30, 2010, totaled $61,379.77.

This court thus finds that the Government is entitled to a judgment as a matter of law on Counts I and II.  Judgment should enter in favor of the United States and against D'Andrea in the amount of the federal tax liens plus future accruals.

Count III.  In Count III, the Government seeks foreclosure of the federal tax liens against the subject property that was transferred by D'Andrea to Gilbert.  As set forth in more detail below, this court finds that (1) the federal tax liens attached to all of Cook's property interests at the time of assessment; (2) defendant D'Andrea does not qualify as a "purchaser" under 26 U.S.C. § 6323; (3) defendants Gilbert's and PSCU's interests in the property were acquired subject to the Government's liens; (4) Gilbert's and PSCU's status as a third party to the Cook-D'Andrea transfer or to the tax assessments does not

preclude foreclosure of the attached lien; and (5) the court should order a forced sale of the property.

Section 7403(c) of Title 26, United States Code, provides in relevant part, "[t]he court . . . in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. . . ." 26 U.S.C. § 7403(c). A federal tax lien "arise[s] at the time the assessment is made and . . . continue[s] until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. A federal tax lien arises "in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person" at the time of the assessment. 26 U.S.C. §§ 6321, 6322.

In this case, the federal tax liens arose on the subject property on April 15, 2002, and August 12, 2002, when an authorized delegate of the Secretary of the Treasury made assessments against Cook for unpaid federal income tax, penalties, interest, and other statutory additions for the 2000 and 2001 tax years. The federal tax liens attached at that time to Cook's rights to the subject property as a fee simple holder under state law, with all of the rights inherent in that estate. Cook could not invalidate the federal tax liens by the quit claim deed to himself and D'Andrea because Cook could not grant D'Andrea a greater interest in the property than he had. The attachment of a federal tax lien "cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of interest." United States v. Rodgers, 461 U.S. 677, 691 n.16

(1983). The transfer of the subject property into joint tenancy "subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere* . . . .'" United States v. Bess, 357 U.S. 51, 57 (1958) (quoting Burton v. Smith, 38 U.S. 464, 483 (1839)). The court agrees with the Government that D'Andrea's interest in the subject property was subject to the federal tax liens at the time of transfer in April 2003 because the federal tax liens attached at the time of assessment in April and August 2002 with respect to persons not subject to the protections of § 6323.

D'Andrea's interest in the property does not fall under the protection of 26 U.S.C. § 6323. Section 6323 provides in pertinent part:

> (a) **Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.**–The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the secretary. . . .

> (h) **Definitions.**–For purposes of this section and section 6324

> . . .

> (6) **Purchaser.**–The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice. . . .

26 U.S.C. § 6323 (emphasis in underscore added). Here, D'Andrea is not a "purchaser" as so defined because she did not give full and adequate consideration for her interest in the subject property when Cook quit-claimed the subject property to himself and D'Andrea on April 8, 2003.

"[T]he term 'adequate and full consideration in money or money's worth' means a consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired. . . . Adequate and full consideration in money or money's worth may include the consideration in a bona fide bargain purchase. . . ." 26 C.F.R. § 301.6323(h)-1(f)(3). Here, as noted above, the quit claim deed itself recited consideration of only "$10.00." In addition, there was no payment of the state document fee. Under Colorado law, a deed submitted for recording must be accompanied by payment of a state documentary fee, the amount of which is to be written on the face of the deed by the county clerk and recorder prior to recording with the words "State Documentary Fee." § 39-13-103, C.R.S. It is a misdemeanor "[t]o willfully and knowingly recite to the county clerk and recorder a consideration greater or less than the actual consideration referred to in section 39-13-102(2)(a) and (2)(b) in connection with the granting or conveying of title to real property by any deed or instrument in writing to which the documentary fee applies." § 39-13-106(1)(b), C.R.S. There are statutory exemptions to the documentary fee requirement. See § 39-13-104, C.R.S. The only exemption that could apply here is "[a]ny deed granting or conveying title to real property in consequence of a gift of such property." § 39-13-104(b), C.R.S. If the grant of the subject property was a gift, D'Andrea cannot claim status as a "purchaser."

Furthermore, D'Andrea testified at her deposition that she did not enter into the April 10, 2003, Promissory Note and Deed of Trust in exchange for her interest in the subject property but rather in order to withdraw equity from the property so that she and Cook could purchase another piece of real estate on which they would build a home.

(Docket No. 60-8 at 12, 14-15; Gov't Ex. 8; D'Andrea Dep.at 60:4-8; 62: 19-25-63:1-2).

Although D'Andrea appears to now refute her deposition testimony in her response to

the Government's motion for summary judgment (see Docket No. 69), the court "will

disregard a contrary affidavit when [it] conclude[s] it constitutes an attempt to create a

sham fact issue." Law Co., Inc. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1169

(10th Cir. 2009).[1]

Nevertheless, as asserted by the Government, even if D'Andrea's signing of the

refinancing papers constituted a form of consideration, it does not meet the requirement

of "full consideration" under the definition of a "purchaser" under § 6323.  Even if

D'Andrea used a half interest in the approximately $150,000 used to pay off the prior

debt (or $75,000), such does not constitute full consideration for a one-half interest in

property then valued at over $240,000.  See WSB Walnut Associates, LLC v. U.S.,

2006 WL 1348520, *7 (N.D. Cal. May 17, 2006) (noting that courts have "consistently

required that the consideration and property value in this equation [under 26 C.F.R.

section 301.6323(h)-1(f)(3)] be relatively close") (citing cases).  For example, as noted

by the Government, in United States v. McCombs, 928 F. Supp. 261, 268 (W.D.N.Y.

---

[1]The court acknowledges that D'Andrea's response (Docket No. 69) is not in the form of an affidavit.  Even if the court liberally construes it as such, the court has considered whether it raises a sham issue.  "In determining whether an affidavit creates a sham fact issue, [the court] consider[s] whether: '(1) the affiant was cross-examined during [her] earlier testimony; (2) the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" Law Co., Inc., 577 F.3d at 1169.  The court has considered these factors and finds that D'Andrea's Response does raise a sham issue.  Even if the court were not to so find, as stated in the text above, D'Andrea does not fall under the definition of a "purchaser" for purposes of § 6323.

1995), the court found that payment of 67 percent of a property's fair market value did not constitute the required consideration.

Colorado's joint tenancy law and Cook's death did not invalidate the federal tax liens. Federal law, not state law, determines the consequences which follow this attachment, and federal law does not provide for detachment or extinguishment of the lien on the taxpayer's death. See United States v. Craft, 535 U.S. 274 (2002). To the extent a state law directly conflicts with the federal statute, the Supremacy Clause dictates the result. Here, the quit claim deed could convey only "the grantor's present interest in the land, if any." Tuttle v. Burrows, 852 P.2d 1314, 1315-16 (Colo. App. 1992). The federal tax liens had already attached to Cook's interest in the property at the time Cook quit-claimed the property to himself and D'Andrea. Cook's death did not extinguish the federal tax lien. See Paternoster v. United States, 640 F. Supp.2d 983, 988-89 (S.D. Ohio 2009) (Death of indebted husband, who held property in joint tenancy with wife, did not extinguish the federal tax lien, which remained attached to the one-half interest transferred to the surviving spouse and may be enforced against escrowed proceeds from the sale of the property.).

Furthermore, Gilbert's and PSCU's interests in the subject property were acquired subject to the federal tax liens. As a matter of law, defendant Gilbert and PSCU had record notice of the federal tax liens at the time of Gilbert's purchase and at the time of PSCU's loan to Gilbert. In addition, through the title insurer, they had actual notice of the federal tax liens. It is undisputed that the NFTLs were filed on December 18, 2003. The NFTLs on their face gave notice of the assessment lien dates, which predated the quit claim deed. PSCU's Deed of Trust was not recorded

until September 2008, which was almost five years after the NFTLs were recorded. As the Government correctly asserts, at the time of PSCU's filing, the NFTLs were properly recorded, and all interest-takers were on notice as a matter of both federal and state law. See Guaranty Bank & Trust Co. v. LaSalle Nat. Bank Ass'n, 111 P.3d 521 (Colo. App. 2004) ("[P]roper recording of an instrument provides constructive notice to all those claiming under the same chain of title."). The title insurer erroneously concluded that the federal tax liens no longer attached to the subject property. (See Docket No. 59-3, Walter Declaration).

PSCU cannot claim protection under 26 U.S.C. § 6323 because the NFTLs were recorded with the Douglas County Recorder prior to the recording of PSCU's Deed of Trust. Sections 6323(a) and (f)(1)(A)(I) provide that a federal tax lien is effective against security interest holders if properly recorded. The recording of the NFTLs nullifies § 6323 protection for subsequent purchasers at least as to Cook's one-half interest in the property. Furthermore, Cook's death did not "detach" the lien. Also, since D'Andrea was neither a purchaser under § 6323 nor a joint tenant prior to the lien attachment, Gilbert also took his interest in the subject property subject to those liens. See 26 U.S.C. § 6323(a); In re LMS Holding Co., 50 F.3d 1526, 1529 (10th Cir. 1995) ("When the state maintains an adequate system for public indexing of federal tax liens, the bona fide purchaser of real estate prevails unless the notice of lien is 'entered and recorded in [a public index at the place of filing] in such a manner that a reasonable inspection of the index will reveal the existence of the lien.'").

The fact that Gilbert and PSCU are "not the assessed taxpayer in this matter and [have] an interest in the subject property does not preclude the United States from

foreclosing upon its lien interests and obtaining a sale of the property." <u>United States v. Kimmell</u>, 2010 WL 1240579, *2 (D. Colo. Mar. 22, 2010).  However, "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances, and . . . some limited room is left in the statute for the exercise of reasoned discretion." <u>United States. v. Rodgers</u>, 461 U.S. 677, 706 (1983).  A court's exercise in discretion should "take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possiblity that innocent third parties will be unduly harmed by that effort." <u>Id.</u> at 709.  In <u>Rodgers</u>, the Court set out a "limited set of considerations [that] will almost always be paramount" and which should be considered in determining whether to allow the foreclosure of a property when the interests of third parties are involved. <u>Id.</u> at 710-11.  These four considerations or factors are not an exhaustive list, and the Court did not "contemplate that they be used as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances." <u>Id.</u> at 711.  Significantly, the Court emphasized, "however, that the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." <u>Id.</u>  These four factors have been summarized as follows:

> (1) the extent to which the Government's financial interests would be prejudiced if it were limited to a forced sale of the partial interest of the party actually liable for the delinquent taxes; (2) whether the third party with the nonliable separate interest would, in the normal course of events, have a legally recognized expectation that the separate property would not be subject to a forced sale by the delinquent taxpayer or his creditors; (3) the likely prejudice to the third party; and (4) the relative character and value of the liable and nonliable interest in the property.

<u>United States v. Pottorf</u>, 898 F. Supp. 792, 796 (D. Kan. 1995).  "Ultimately the district

court's decision should rest on 'common sense' and the 'special circumstances' of the individual case." United States v. Jensen, 785 F. Supp. 922, 924 (D. Utah 1992).

Here, upon very careful consideration of these factors and the circumstances of this case, this court finds that the Government has shown that these factors weigh in favor of a forced sale of the subject property. Exercising this court's discretion rigorously and sparingly, as directed by the Supreme Court, this court recommends that the federal tax liens encumbering the subject property should be foreclosed, the subject property should be sold free and clear of the interests of D'Andrea, Gilbert, and PSCU, and the proceeds should be used to satisfy Cook's federal tax liens. If the sale proceeds exceed the federal tax liens, any balance should first pay PSCU's loan to Gilbert that is secured by the subject property.

"First, the United States has shown it would likely suffer prejudice if the Court ordered only a partial sale of the subject property and that this factor weighs in favor of foreclosure of the entire subject property." United States v. Kimmell, 2010 WL 1240579, at *2. If this court allowed the sale of the subject property subject to Gilbert's and/or PSCU's interests, in all likelihood potential purchasers at any judicial sale would not be likely to buy the property or would be unwilling to pay a fair market price because liens would continue to attach to the property. Thus, as the Government asserts, it would incur prejudice in that no buyer would purchase the subject property or it would be sold at a discounted price. Therefore, the danger of prejudice to the Government weighs in favor of foreclosure of the subject property.

Second, based upon the undisputed fact that the NFTLs were recorded years before the conveyance to Gilbert and the Deed of Trust being issued by PSCU, this

court agrees with the Government that Gilbert and PSCU cannot show any legal expectation that the subject property would be protected from a forced sale.

Third, this court has considered the likely prejudice to PSCU and Gilbert. As asserted by the Government, if this court were to order foreclosure of the federal tax liens against the subject property and authorized the sale, any prejudice to defendants Gilbert and PSCU would be mitigated because they would be compensated in proportion to their interest in the subject property after application of the sales proceeds to the costs of sale and to Cook's tax liabilities which are being foreclosed. The amount of liability secured by the federal tax liens, as calculated to June 30, 2010, was $61,379.77. Two years ago, as evidenced by the September 2008 loan from PSCU, the value of the subject property exceeded $200,000.

Fourth, the court has considered "the relative character and value of the non-liable and liable interests held in the property . . . ." Id. at 2152. Here, this factor weighs in favor of Gilbert and PSCU. PSCU claims it gave full value to obtain an interest in 100 percent of the property. Furthermore, Gilbert has invested funds into the property. In contrast, Cook and D'Andrea have no interest in the subject property at this point. Nevertheless, this court finds that this factor is outweighed by the findings above with respect to the three other factors.

Based upon careful consideration of all of the factors above, and the circumstances in this case, this court recommends a forced sale of the subject property.

## Conclusion

In sum, this court finds the Government's motion for summary judgment should be granted, and the other three motions for summary judgment should be denied.

Judgment should enter in favor of the United States and against defendant D'Andrea pursuant to § 38-8-108, C.R.S., and alternatively the federal tax liens encumbering the subject property should be ordered foreclosed, the subject property should be sold, and the proceeds should be used to satisfy the federal tax liens of Monty L. Cook. If the sale proceeds exceed the federal tax liens, any balance should first pay PSCU's loan to Gilbert that is secured by the subject property. In addition, the United States should be awarded its costs.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendant Howard Mitchell Gilbert's Motion for Summary Judgment **(Docket No. 31)** be **denied**. It is further

**RECOMMENDED** that Defendant Public Service Credit Union's Motion for Summary Judgment **(Docket No. 33)** be **denied**. It is further

**RECOMMENDED** that Defendant Joni K. D'Andrea's Motion for Summary Judgment **(Docket No. 42)**, be **denied**. It is further

**RECOMMENDED** that the United States' Motion for Summary Judgment **(Docket No. 58)** be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file**

and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date:  August 31, 2010                    s/ Michael J. Watanabe
      Denver, Colorado                    Michael J. Watanabe
                                      United States Magistrate Judge